By the Court.*—Sheldon, J.
The Eleven Mile creek being a public highway, and used as such for the purposes of navigation, the riparian owner had no greater right to its nse than the public, and no authority to maintain or allow others to maintain any obstruction in the waters thereof. His ownership of the abutting land drew to him no rights over the water or to the land under the water other than those possessed by the general public. It being a public highway, he could do nothing which interfered with the full enjoyment, by all others, of its use as such highway. And if he appropriated any part of it by erections or obstructions of a continuous character, he created a public nuisance, and was liable to be proceeded against by indictment or information.
The mooring of the cribs of logs in the manner stated was an unlawful obstruction, and a public nuisance was thereby created in the creek (Hart v. The Mayor, &c., 9 Wend. 571, 584). A mere temporary occupation of a part of a highway by persons engaged in building, or in receiving or delivering goods from stores, or the like, is allowed from the necessity of the case ; but a systematic and continued encroachment on a highway, though for the purpose of carrying on a lawful business, is unjustifiable (People v. Cunningham, 1 Denio, 524, 530 ; 9 Wend. 584, supra ; King v. Russell, 6 East, 427 ; Rex v. Jones, 3 Campbell, 230). The right of the plaintiff permanently to appropriate the *213 creek, either by himself or to allow others so to do, was entirely unfounded. The court, in Hart v. The Mayor, supra, speaking in relation to a float moored in a basin or river, said : “This float, if permanently moored and continued in the open part of the river, thereby rendering navigation less safe and convenient, would, I apprehend, most clearly be a public nuisance, liable to be indicted as such, or to be abated without indictment by any individual who might be injured or aggrieved by it.’’
The law has always regarded any unauthorized continuous obstruction of a public highway as a nuisance per se (Per Denio, Ch. J., 14 N. Y. 506). The general principle is settled, that any obstruction of a public highway, for an unreasonable length of time, however lawful the business which is sought to be prosecuted, is indictable as a public nuisance, although room enough might still be left for the accommodation of the public. The public are entitled to the use and enjoyment of the whole of the highway, and no individual can appropriate a portion of it to his own exclusive use, and shield himself from responsibility to the public by saying that enough is still left for the accommodation of others (9 Wend. 571, supra).
There can be no question but what the rafts as continuously moored were an unauthorized and illegal encroachment upon a public highway for private purposes. It is what in law is called a purpresture, which is defined by Co. Litt. 277, 6, “a clandestine encroachment and appropriation of the land of another, or upon land or waters that should be common or public.”
Judge Story, in his Equity Jurisprudence, section 931, says: “Purpresture, according to Lord Coke, signifies a close or enclosure, that is, when one encroaches, or makes that several to himself which ought to be common to many. . . But, in its common acceptation, it is now understood to mean an encroachment *214 upon the king, either-upon part of his demesne lands, or upon rights and easements held by the crown of the public, such as upon highways, public rivers, forts, streets, squares, bridges, quays and other public accommodations.” Sir William Blackstome, in his Commentaries, vol. 4, page 167, says: “ Where there is a house erected or an enclosure made upon any part of the king’s demesnes, or of an highway or common street, or public water, or such like public things, it is properly called a purpresture.” See also the opinion of Justice Potter in the Delaware and Hudson Canal Co. v. Lawrence, delivered at general term, third department (upon which the case was affirmed in the court of appeals in July, 1874), see 2 Hun, 163, &c., in which, at page 180, he says, “It may be conceded that an individual, for his own private purposes, without title to the soil, would be guilty of an obstruction, which would be a public nuisance, who should erect a wharf or make any other encroachment upon a navigable stream, port or harbor.’’ The case of Hart v. The Mayor, &c., of Albany, supra, “was a case of clear, unauthorized and illegal encroachment for private purposes. It is what, in law, is properly called a purpresture, which is a ‘clandestine encroachment and appropriation of the land of another, or upon land or waters that should be common, or public.’ A party who is only entitled to free passage upon a public highway, upon land or water, has no right to occupy it by any permanent obstruction; and any such obstruction can be abated by indictment, or by an individual who is injured or aggrieved by it; and such obstructions may be declared to be nuisances, whether they are shown to produce injury, or not. Even benefits or advantages to the public cannot be shown in defense. A purpresture is per se a nuisance.” According to authority, a purpresture may be defined to be, an unau *215 thorized encroachment upon, and appropriation of land or waters which are common and public.
These rules of law apply to all highways, whether streets and roads or navigable streams, with equal force, and are founded upon the manifest necessity of assuring to the public the full and unobstructed use of public rights. It was in this view that the supreme court of Tennessee held that every obstruction or erection in a stream declared navigable by law, which injures the navigation of such stream, is a nuisance (Gold v. Carter, 9 Humphrey, 369).
An attempt has been made, in cases where the erection or obstruction was productive of some substantial benefit to the local community, to justify its continuance, but the courts have inflexibly adhered to the strict and only safe rule of the common law, that the public rights are to be jealously guarded and not infringed upon under any pretext, or by any specious pretense of benefit. Nor is the degree of the obstruction to be measured or considered. It will not avail to say there is room enough left for all the public. There is no power to abridge the natural rights of the public in the least degree; for, if the imperfect judgment of man, however august the tribunal may be, is once allowed to measure the degree of obstruction that may lawfully exist, the public would eventually find that private enterprise had usurped the prerogatives and rights which should never have been impaired. In the case before us, if we grant for a moment that any right existed to moor the rafts in the stream, where shah we stop in determining how many rafts of equal size shall be allowed to occupy continuously the very place designed by nature for the free and equal use of all men ?
There can be no doubt but what the occupation of the stream by the plaintiff, or by his license, was illegal and unauthorized. He can found no right on, and no *216 claim can accrue to him from, such a perversion of the natural and common privileges of all men. He might as well seek to recover for the use of the free air above his farm. The law will imply no obligation to pay him a price for such consideration, and even an express agreement should be considered as void, as being illegal and against public policy.
In this view of the case, the judgment appealed from must be reversed, with costs.

Present, Clinton, Ch. J., and Sheldon and Smith, JJ.