O’Gorman, J.—[Dissenting.]
This is an appeal from a judgment restraining the defendant from obstructing the southerly side of Vesey street in front of his premises (Nos. 35 and 31), by any plankway or bridge, or other like obstruction, elevated above the sidewalk and reaching from said premises or from the stoop in front thereof to the roadway, or from hindering the plaintiffs or their employees and customers from having free use and passage along the sidewalk in front of defendant’s said premises.
The action was tried at special term, without a jury. The plaintiffs, in their complaint, did not ask any judgment or relief, by way of damages, but only for an injunction.
They alleged that the obstruction complained of was a public nuisance, but of special injury to the plaintiffs and their business ; that the injury was great and irreparable, incapable of exact measurement in damages, and could not be adequately compensated in money, and that actions for each renewal of the nuisance would cause a multiplic *123 ity of litigation. No evidence was given on the part of the plaintiffs, from which any adequate or reasonable measure of damages could be ascertained, or which would have warranted a verdict for more than nominal damages, if the action had been brought to recover damages.
The material facts, as they appeared in evidence, are these : The plaintiffs, before December, 1882, and at the time of bringing this action, occupied premises on the south side of Vesey street, and used them in their business of wholesale and retail grocers. Their premises were one hundred and twenty-five feet west of the corner of Church street and Vesey street. The defendant also occupied premises on the south side of Vesey street, and used them in the same business of wholesale and retail grocer. His premises were on the corner of Church street, and had a frontage on Church street, as well as a frontage on Vesey street, and were to the east of the premises of the plaintiffs. About December 1882, the defendant commenced to use, in loading and unloading his goods, a plank skid or bridge, about three feet wide, starting from about eighteen inches inside his stoop fine, and extending thence over the sidewalk to a wooden horse or rest (such as masons use), at the curb, where it rested near the end of his trucks. This skid was about twelve inches above the sidewalk at the stoop line, and about two feet six inches at the curb. On the stoop in front of defendant’s premises, between the point where the skid rested and the house front, there was left a space, which might be used by pedestrians, of about five feet. This bridge was used by the defendant continuously during the greater part of every business day, and there is evidence to sustain the finding of the trial judge, that there "was no necessity for such use of the bridge by the defendant. On this subject there was considerable conflict of testimony. There was enough of evidence, however, to sustain the conclusion that this continuous use of this bridge by the defendant seriously impeded pedestrians in passing to and fro along this street, and, for a considerable period in each business *124 day, obstructed the sidewalk and created a public nuisance, for abatement of which, action would he on behalf of the people of this state.
In Green v. R. R. (12 Abb. N. C. 143), the learned trial judge says : “ It is well settled law that the conduct of any business, intrinsically lawful, may give rise to a cause of action, if, under ah the circumstances, it occasions an unreasonable encroachment on the public highway. Thus, in Rex v. Jones (3 Camp. 230), Lord Ellenborough said, c A' cart or wagon may be unloaded at a gateway, but this must be done with promptness. The defendant is not to eke out the inconvenience of his own premises by taking the public highway into his timber yard; and if the street be too narrow he must move to a more commodious situation for carrying on his business.’ In the King v. Russel (6 East, 426), it was held that if the nature of the defendant’s business were such as to require the loading and unloading of so many more wagons than could be done conveniently within his own private premises, he must either enlarge his premises or move his business to a more convenient spot ; that the primary object of the street was for free passage of the public, and anything .■ which impeded that free passage was a nuisance. And in Moore v. Jackson (2 Abb. N. C. 211), it was held that a systematic and continued encroachment on a highway, though for the purpose of carrying on a lawful business, is unjustifiable.” The public are entitled to an unobstructed passage upon the streets, including the sidewalks of the city (Clifford v. Dam, 81 N. Y. 52). The law of the public street is motion. A mere temporary occupation of a part of a highway, however, by persons engaged in receiving or defivering goods from stores or the like, is allowed from the necessity of the case, but a systematic and continued encroachment on a highway, though for the purpose of carrying on a lawful business, is unjustifiable (Moore v. Jackson, 2 Abb. N. C. 211, 214). A temporary and necessary use, such as the delivery of barrels from wagons on skids across a sidewalk, is permissible, if *125 sufficient space is left on the other side of the roadway (Matthews v. Kelsey, 58 Maine, 56). The public nuisance, therefore, in the case at bar, does not arise from an obstruction to the sidewalk by reason of its use for an unlawful purpose, but by reason of its excessive, continuous and unnecessary use for a lawful purpose.
So much as to the relations and rights of the public at large, as against obstructions, and in the abatement thereof.
This action, however, is not brought on behalf of the public for the abatement of a public nuisance, or even on behalf of numerous property owners, or business interests in Vesey street, but only by the plaintiffs as private individuals, on their own behalf, and because of a special injury and damage to them, different from the damage inflicted on the public, and as to which special damage the public have no interest or concern.
The trial judge has found that the plaintiffs have lost custom by reason of the maintenance of this bridge by the defendant. The evidence—and the only specific evidence on that subject—is that given by a witness, who stated that he was the publisher of a newspaper—had an office at 30 Vesey street, at corner of Church street, for nearly three years—he generally bought his groceries down town, mostly at plaintiffs’ and Bennet’s, also at Stiner’s, and perhaps at other places,—quite a number of times,, he found the street blocked up with this bridge, and it caused him to go to the other side of the street—he did not care to go into the street when it was muddy—bought probably four-fifths of his groceries from plaintiffs—does not think he bought quite that proportion now. There is no evidence, on the part of the plaintiffs, of the quantity or value of the groceries which the witness had been in the habit of buying from them, before the use of this skid by the defendant, or the extent of the decrease in amount or value of his purchases afterwards, or any evidence whatever of any specific loss, on which any but nominal damages could be awarded. There was no attempt to prove
*126 diminution of the rental value of plaintiffs’ premises, which was a measure of damages adopted in Francis v. Schoellkopf (58 N. Y. 154); Green v. R. R. (supra, 146). Thus, the question of damages which plaintiffs have heretofore incurred, has been left wholly speculative, and there is no evidence that any injury could be reasonably anticipated or feared by the plaintiffs, by reason of the continuance of the use of this skid by the defendant, other or greater than that to which plaintiffs had been theretofore subjected.
As has been before stated, the alleged nuisance here complained of, does not arise from any trespass on, or abuse of the sidewalk for any purpose, in itself noxious or unlawful, but from an unnecessary,- continuous, and excessively prolonged use of the sidewalk for a purpose, in itself legitimate and proper. In such cases, courts of equity have been slow to interfere and reluctant to apply the remedy of injunction. It was said by an eminent judge, “that no instance could be found of the interposition by injunction where the nuisance could be regarded as only eventual and contingent ” (2 Story Eq. J. § 924 and note). “A court,” says Agnew, J., in Huckinstine’s Appeal (Á) Penn. 81, 102), “whose arm may fall with crushing force on the every-day business of men, destroying lawful means of support, cannot approach such cases with too much caution.” Indeed, there cannot be a jurisdiction exercised by a court of equity, demanding more delicacy in its use.
It is clear, that unless plaintiffs have proved some special, substantial, and appreciable damage, other than that sustained by the people at large, they are not entitled to an injunction. And I am unable to see why there should have been any difficulty in proving the damages, if any there were, which have been inflicted on the plaintiffs. There is no foundation for an injunction on the ground that any injury other or greater than what has occurred in the past, would occur in the future, or any injury that could be in its nature irreparable, that is *127 to say, irreparable, not because it would be so small that it could not be estimated, but because it was likely to be so great, that it would be incapable of compensation in damages.
Entertaining these views, I am not satisfied that the plaintiffs have proved facts, entitling them to the exercise of the extraordinary powers of a court of equity in their behalf. If the special injury which they complain of, be not susceptible of exact measurement in damages, it is not easy to avoid the suspicion that it was an injury too inconsiderable, and insignificant to warrant any serious apprehension of its recurrence in the future, or any claim on this court for protection against it. In cases of this kind, the doubt will naturally suggest itself, whether the court in consenting to protect the plaintiffs from an uncertain and exaggerated danger, may not be the means of inflicting on the defendant a real and substantial injury.
There is still another objection to the scope and form of the judgment, which is, I think important. The injury done to the plaintiffs, if any, arises not from the use of the bridge by the defendant, because the use, within proper limits as to time, and for a proper purpose, would have been unobjectionable. The bridge became objectionable, from its abuse, by keeping it up continuously and for periods of time too protracted, and when its use was not necessary to the defendant’s business. The judgment rendered made no distinction in this regard, but restrained the defendant absolutely, and without any limit as to the time or occasion.
This was, I think, a judgment larger in its scope;and operation, than the plaintiffs were entitled to, in any aspect of this case, and would have the effect of restraining the defendant, not only from the unnecessary, continuous, and unlawful use of this bridge, but from the occasional and proper use of it, as a necessary means of carrying on his business, not ■ in itself unlawful, and against which, neither the public, nor the plaintiffs could have any legitimate cause of complaint.
*128 For these reasons, I am of the opinion that the judgment should be reversed, with costs, and that a new trial be ordered.